Carolyn ESKEW, Respondent,

v.

DIRECTOR OF REVENUE, Appellant.

No. ED 76144.

Missouri Court of Appeals, Eastern District, Division One.

April 25, 2000.

**160**

Jeremiah W. (Jay) Nixon, Atty. Gen., Evan J. Buchheim, Asst. Atty. Gen., Jefferson City, for appellant.

Timothy F. Devereux, Clayton, for respondent.

PAUL J. SIMON, Judge.

The Director of Revenue (Director) appeals from the judgment of the Circuit Court of St. Louis County setting aside the revocation of Carolyn Eskew's driving privileges under Section 577.041 RSMo 1994 (all further references herein shall be to RSMo 1994 unless otherwise indicated) for refusing a chemical test.

On appeal, Director contends that the trial court erred in setting aside the revocation of Eskew's driving privilege under Section 577.041 because the director proved a prima facie case showing that: (1) Eskew was arrested; (2) the arresting officer had reasonable grounds to believe Eskew was driving while intoxicated; and (3) Eskew refused to submit to a breathalyzer test. We reverse and remand.

█ In review of judge-tried cases, we will affirm the trial court's judgment if it is supported by substantial evidence, is not against the weight of the evidence and does not erroneously declare or apply the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.banc 1976).

The record on appeal consists primarily of the Alcohol Influence Report and the Investigative Report, both written by Officer Andert of the Police Department of the City of Kirkwood. The Investigative report reveals that on March 20, 1997, at about 11:41 p.m., Officer Andert received a radio call to respond to a traffic accident. Officer Tabers arrived at the accident scene while Officer Andert was en route and advised over the radio that the accident involved an intoxicated driver.

When Officer Andert arrived at the scene, he observed that "the entire intersection of the northbound lanes and the exit ramp was blocked by wrecked vehicles." He also noted that "Officer Tabers had already placed a female subject in handcuffs and had her seated in the rear of Officer Tabers' vehicle." Later at the police station, after producing identification the subject was identified as Eskew. Officer Andert noted that "when Officer Tabers first arrived at the scene, Ms. Eskew was still seated in her vehicle with the keys in the ignition and the motor running. When Officer Tabers approached her, she said that she did not know why these people were parked in front of her and asked why they weren't moving.

On speaking with other drivers involved in the accident, Officer Andert noted that the "intoxicated subject" had been traveling westbound exiting Highway 44 at S. Kirkwood Road and had apparently violated the red traffic signal, drove into the intersection and collided with two vehicles. She then apparently attempted to back up and leave the scene, but backed up into a pickup truck.

Thereafter, Officer Andert made contact with Eskew, observed a heavy odor of alcoholic beverages on her breath and noted that her eyes were watery and her pupils were dilated. After Officer Andert removed her from Officer Tabers' car to place her in his own car, he noticed that she was walking unsteadily and wobbling. She was transported to the police station, where she was advised by Officer Andert that she was under arrest for Driving While Intoxicated.

Eskew was asked to complete sobriety tests, including the alphabet test, the walk-and-turn test and one leg stand test, which she refused. She was then advised of her rights under Missouri's Implied Consent Law as well as her Miranda Rights, which she indicated that she understood. She was asked to take a breathalyzer test and she refused.

Officer Andert completed the Alcohol Influence Report and asked Eskew to respond to the questions, which she did. She answered that she had not eaten anything since lunch at 11:30 a.m. and that she had been drinking. She stated that she had began drinking red wine at the Ritz Carlton Hotel at approximately 7:30 p.m. and ending at 10:00 p.m. She indicated that she had consumed three glasses of red wine. She also stated that she had not been involved in an accident. The Alcohol Influence Report also indicated that Eskew had refused to submit to the breathalyzer test. Officer Andert gave her notice that her Missouri driver's license was revoked pursuant to Section 577.041 for refusing to submit to a chemical test and took possession of her license.

Eskew filed a petition for review in the Circuit Court of St. Louis County of the revocation of her driving privilege. The Director presented certified records of the Department of Revenue, including Officer Andert's Investigative Report and Alcohol Influence Report, in lieu of live testimony. Officer Tabers' reports, if any, were not submitted. Eskew did not present evidence. After receiving the certified records into evidence, the trial court granted the parties time to file a memorandum of law in support of their positions at trial. Eskew filed a memorandum, but Director did not. The trial court granted Eskew's petition to set aside the revocation, finding that Director failed to prove that the arresting officer had probable cause to arrest Eskew.

On appeal, Director contends that the trial court erred in setting aside the revocation, because the director established that: (1) Eskew was arrested, (2) that the arresting officer had reasonable grounds to believe that Eskew was driving while intoxicated and thus reasonable grounds to arrest her; (3) that Eskew refused to submit a breathalyzer test.

Initially, we consider Eskew's motion to strike Director's reply brief, filed on March 27, 2000 just two days before oral arguments were heard on the case, contending that the reply brief was untimely. Rule 84.05 provides that appellant may, within fifteen days after receipt of respondent's brief, file a reply brief, but that we may, by order in specific cases, lengthen the periods prescribed above for serving and filing briefs. We granted Director's motion to file its reply brief out of time, therefore the motion to strike is denied.

Next we consider whether the trial court erred in setting aside the revocation. Section 577.041 provides that if a person under arrest for driving while intoxicated refuses to submit to a chemical test, the officer shall, on behalf of the director of revenue, serve the notice of license revoca-

162

tion personally upon the arrestee and take possession of her Missouri drivers license.

 Here, the Investigative report and Alcohol Influence report clearly indicate that Eskew was arrested and that she refused to submit to the breathalyzer test. The only issue to resolve was whether Officer Andert, the arresting officer, had probable cause to arrest Eskew for driving while intoxicated.

Probable cause to arrest exists when the facts and circumstances would warrant a reasonably prudent, cautious and trained police officer to believe that an offense has been committed. *McCabe v. Director of Revenue*, 7 S.W.3d 12, 14 (Mo. App.E.D.1999). It is not necessary for an officer to actually observe a person driving to have probable cause to arrest the person for driving while intoxicated, but rather it may be determined by the collective knowledge and facts available to all of the officers participating in the arrest. *Id.* A police officer is entitled to rely on official information provided by another officer when determining if there is probable cause to arrest. *Id.* Further, while such evidence may be hearsay, it is sufficient to establish probable cause because it is not offered for its truth, but to explain the basis for a belief that probable cause to arrest existed. *Id.*

Here, Officer Andert received notice that the accident involved an intoxicated driver. When he arrived at the scene, he noted that a subject, Eskew, was already placed in the back of Officer Tabers' patrol car. Further, he noted that when Officer Tabers arrived at the scene, Eskew was still seated in her vehicle with the keys in the ignition and the motor running. Additionally, Officer Andert interviewed other drivers involved, who stated that an intoxicated driver had caused the accident. All of the above information, would warrant a reasonably a prudent, cautious and trained police officer to believe that Eskew had been driving a motor vehicle at the time of the accident.

Further, when Officer Andert approached her he smelled a heavy odor, which he recognized as alcohol. She was swaying and wobbling. Finally, she admitted to drinking wine at the Ritz Carlton. Such evidence, collectively, supports a belief that Eskew had been drinking. Thus, the totality of the circumstances, known to Officer Andert by his own observations and those conveyed to him by Officer Tabers and other persons, would warrant a reasonably prudent, cautious and trained police officer to believe that Eskew was driving while intoxicated and constitute probable cause for her arrest. Thus the judgment must be reversed and remanded for further proceedings in accordance with this opinion.

JUDGMENT REVERSED AND REMANDED.

GARY M. GAERTNER, P.J. and JAMES R. DOWD, J., concur.