Brandon L. COX, Petitioner–
Respondent,

v.

DIRECTOR OF REVENUE, STATE
OF MISSOURI, Respondent–
Appellant.

No. 23308.

Missouri Court of Appeals,
Southern District,
Division One.

Dec. 7, 2000.

Motion for Rehearing or Transfer Denied
Jan. 2, 2001.

Jeremiah W. (Jay) Nixon, Atty. Gen., Evan J. Buchheim, Asst. Atty. Gen., Jefferson City, for Respondent-Appellant.

No appearance for Petitioner-Respondent.

MONTGOMERY, Judge.

This is an appeal by Missouri's Director of Revenue ("Director") from a judgment restoring driving privileges for Brandon L. Cox ("Cox"). The appeal followed a trial *de novo* after an administrative suspension of Cox's driving privileges under §§ 302.500, *et. seq.*[1] Director had ordered the suspension after Cox was arrested for allegedly driving while intoxicated ("DWI"), § 577.010. The issue on appeal is whether the evidence presented to the trial judge compelled a finding that the arresting officer had probable cause to believe Cox had driven a motor vehicle found wrecked on a public highway.

On January 6, 1997, at approximately 12:39 a.m., Trooper M.A. Bernier ("Bernier") of the highway patrol, was directed to investigate a motor vehicle accident in rural Christian County, Missouri. Upon his arrival, Bernier found an unconscious male on the ground, lying outside of and north of an overturned pickup truck. In his accident report, Bernier described the man's injuries as "disabling" and "serious" to the point that he was unable to respond to any questioning. In that regard, Bernier reported he was "unable to interview [the man] due to injuries" and never gave him a Miranda or "implied consent" warning because he was unconscious. Ultimately— although when this occurred is unclear— the injured man was "transported by helicopter" to a Springfield hospital.

As to the accident scene, Bernier's report showed that the door on the driver's side of the pickup was torn off. The pickup itself was overturned with its left side downward and the front of the vehicle headed west. Bernier reported "[n]umerous empty beer cans were located within and around the vehicle." Additionally, Bernier noted that the "interior of the vehicle smelled strongly of intoxicants" as did the man lying on the ground. The record does not reflect how or when Berni-

er was able to identify the injured man as Cox or learned the overturned vehicle was owned by Cox.

At the hospital, a blood sample was taken from Cox. Analysis of that sample revealed a blood alcohol content of 0.11%. On an "Alcohol Influence Report" form, Bernier reported he arrested Cox on January 6, 1997, at "0125" in Christian County, Missouri.

Upon receipt of the above information, Director revoked Cox's driving privileges under § 302.050 for driving with an alcohol concentration of at least 0.10%. Cox filed a petition with the Christian County circuit court seeking review of Director's action. At a trial *de novo* before that court, Director and Cox agreed to submit the case by stipulation and on the Department of Revenue certified records. The trial court ruled for Cox and against Director. This appeal followed.

## STANDARD OF REVIEW

Review of this nonjury case is under Rule 84.13(d).[2] As the rule is interpreted, this court is to affirm the trial court's decision unless it is unsupported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Rogers v. Director of Revenue*, 947 S.W.2d 475, 477 (Mo.App.1997) (citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.banc 1976)).

## DISCUSSION AND DECISION

Director's single point relied on maintains the trial court erred in setting aside Director's revocation of Cox's driving privileges. Director insists the trial court misinterpreted the law and that its judgment was against the weight of the evidence "in that the Director proved a prima facie case that the arresting officer had probable cause to arrest Cox for DWI." Cox counters that the trial court's finding that Bernier lacked probable cause to ar-

---

1. All statutory references are to RSMo 1994 unless otherwise indicated.

2. The standard of review stated in Rule 84.13(d) was formerly in Rule 73.01(c).

rest him for DWI was supported by the record.

■ Under § 302.505.1, RSMo 1996, Director has the burden to establish that the arresting officer had probable cause to make the initial arrest and that the chemical analysis showed a blood alcohol content of at least 0.10% by weight. *Mayberry v. Director of Revenue*, 983 S.W.2d 628, 631 (Mo.App.1999). Because the parties stipulated to the blood alcohol content, the single issue is whether the evidence compelled a finding that Bernier had *probable cause* to arrest Cox for *driving* the wrecked vehicle.

■ An evaluation of probable cause to arrest is made in the context of whether the facts and circumstances would warrant an individual of reasonable caution to believe that an offense has been committed. *Mayberry*, 983 S.W.2d at 631. Specifically, a decision on whether an officer had probable cause to make an arrest must be made by viewing the situation as it would have appeared to a prudent, cautious, and trained police officer. *Id.*

■ "The type of facts needed to determine probable cause are found in the definition of the substantive offense and in case law dealing with the sufficiency of the evidence to convict of the substantive offense." *Wilcox v. Director of Revenue*, 842 S.W.2d 240, 242 (Mo.App.1992).[3] However, "a vast gulf exists between the quantum of information necessary to establish probable cause and the quantum of evidence required to prove guilt beyond a reasonable doubt" which is necessary in DWI cases. *Wilcox*, 842 S.W.2d at 243.

■ "To form a belief amounting to probable cause, the arresting officer need not possess all the information concerning the offense and the arrestee's participation in it." *Id.* Circumstantial evidence may be relied on when the arresting officer does not actually see who operated the motor vehicle. *Mayberry*, 983 S.W.2d at 631. Accordingly, it is not necessary for an officer to actually observe a person driving in order to have probable cause to arrest for DWI.[4] *Id.* "Circumstantial evidence means evidence that does not directly prove a fact in issue but gives rise to a logical inference that the fact exists." *State v. Harris*, 807 S.W.2d 528, 529 (Mo. App.1991).

■ On the other hand, "mere suspicion is insufficient to establish probable cause." *Wilcox*, 842 S.W.2d at 243. Probability and reasonableness characterize the concept of probable cause. *Id.* Probable cause is a fluid concept and, as such, turns on the assessment of the probabilities in particular factual contexts. *Id.*

The Director relies on the following cases: *McCabe v. Director of Revenue.*, 7 S.W.3d 12 (Mo.App.1999); *Pendergrass v. Director of Revenue*, 4 S.W.3d 599 (Mo. App.1999); *Simmons v. Director of Revenue.*, 3 S.W.3d 897 (Mo.App.1999); *McDaniel v. Lohman*, 989 S.W.2d 688 (Mo. App.1999); *Haas v. Director of Revenue*, 975 S.W.2d 483 (Mo.App.1998); *Baptist*, 971 S.W.2d at 367; *Pappin v.. Director of Revenue*, 958 S.W.2d 591 (Mo.App.1998); and *Wilcox*, 842 S.W.2d at 241. However, the facts, in these cases differ from the instant case in at least one respect. In all

---

**3.** The substantive offense for driving while intoxicated is found in § 577.010.1, as follows: "1. A person commits the crime of 'driving while intoxicated' if he operates a motor vehicle while in an intoxicated or drugged condition." The terms "driving" and "operating" were defined by § 577.001, as follows: "[P]hysically driving or operating *or being in actual physical control of* a motor vehicle." (Emphasis added). This statute was amended in 1996 which deleted the italicized portion of the definition.

**4.** After the amendment of § 577.001 in 1996, *see* note 2, a motorist may no longer be convicted of DWI merely because he or she is in "control" of a running vehicle. *Baptist v. Lohman*, 971 S.W.2d 366, 368 (Mo.App.1998). However, § 577.001 as amended still permits "operating a motor vehicle" to be proven by circumstantial evidence. *Id.*

of the Director's cases, we find either an admission of driving, a person found behind the steering wheel, or a witness who identified the driver. None of these facts are present here. Nevertheless, we find no factually similar case to this one which would uphold the trial court's determination.

Therefore, we are left on our own to decide whether the facts in this case would not allow a prudent, cautious, and trained police officer to arrest Cox for driving while intoxicated. We must also keep in mind that Bernier was entitled to rely on the circumstantial evidence at the accident scene in deciding whether to make an arrest.

Upon arriving at the accident scene late at night in a rural location, Bernier found a seriously injured person lying next to a heavily damaged vehicle owned by the injured person. No other person was present. Bernier smelled intoxicants inside the wrecked vehicle and on the injured person. Empty beer cans were found in and around the vehicle. Certainly, this circumstantial evidence does not directly prove Cox was driving the wrecked vehicle. However, this evidence plainly gives rise to a logical inference that Cox was the driver. No other evidence exists which detracts from this inference.

The evidence in this case is stronger than the evidence in *Mayberry*, 983 S.W.2d at 628. In *Mayberry*, there were other persons in the proximity of the parked vehicle in question who could have been driving it. Under those circumstances, this Court held that a law enforcement officer who did not see anyone driving the vehicle in question lacked probable cause to believe a person seated in the vehicle was the driver. As stated, in the instant case no one else was present, nor was there any evidence that another person had been present at the accident scene. Therefore, we find there was sufficient probable cause for Bernier to conclude Cox had been driving the wrecked vehicle.

Upon this record, the trial court's finding of lack of probable cause is not supported by substantial evidence and misapplies the law. Director's point has merit.

The judgment of the trial court is reversed, and the cause is remanded with directions that the trial court enter judgment upholding the suspension of Cox's driving privileges.

PARRISH, P.J., concurs.

SHRUM, J., dissents.

SHRUM, Judge, dissenting.

I respectfully dissent. The evidence on whether Cox had driven a motor vehicle while intoxicated is found in Bernier's reports. In considering the reports, we should keep in mind it is the facts that were possessed by Bernier *before* the arrest upon which we decide the issue of probable cause. See *Wilcox v. Director*, 842 S.W.2d 240, 243 (Mo.App.1992). Those facts show Trooper Bernier arrived on the scene of a single vehicle accident at "0054" on January 6, 1997. Although Bernier recorded an "accident time" of "0035," his report is without facts to support that conclusion, such as the status of the ignition (on or off), engine compartment warm, other mechanisms (e.g. lights) running, an admission of driving, or other facts that might suggest how long the vehicle had been stopped. Empty beer cans were found strewn about the scene. Also, a man was found lying outside the car unconscious and Bernier detected an odor of alcohol, both on the man and inside the car. However, as stated, there are no admissions to driving by anyone nor eye witness accounts of who was driving. Bernier was "unable to interview [the man] due to injuries," never gave him a *Miranda* or "implied consent" warning, and did not request performance of field sobriety tests because the injured man was unconscious. Although Bernier reported finding blood and hair on the windshield and driver's side door frame, no tests were done to link these items to Cox.

Finally, the most glaring problem with this record is that it yields *no clue* about when Bernier discovered the wrecked vehicle belonged to Cox. Accordingly, the trial court could have concluded the only information Bernier possessed when he arrested Cox was (1) Bernier found an unconscious man at the scene of an accident, (2) the man smelled of alcohol, (3) the man was lying beside a pickup truck, and (4) the truck had been wrecked in a rural area.

Having arrested Cox for DWI based on such facts evidently Bernier *suspected* Cox to be the driver of the overturned vehicle. However, suspicion alone is insufficient to establish probable cause. As explained in *House v. Director of Rev.*, 997 S.W.2d 135 (Mo.App.1999):

> "Director, in order to sustain the suspension or revocation of a license, must prove: (1) the *driver*—not someone *believed* to be the driver—was arrested on probable cause that he or she was committing an alcohol-related driving offense, and (2) the *driver*—not someone *believed* to be the driver—was driving with a blood alcohol concentration of at least .10 percent by weight ."

*Id.* at 139[3]. At best, the facts here may support Bernier's suspicion that Cox was the driver; they do not compel a finding that Bernier had probable cause to arrest Cox for DWI. In this "factual context," the trial court could have found it equally practical to believe someone else was driving, and this person left the scene for help or fled out of fear of being arrested.

I cannot conclude that Director has shown by preponderance of the evidence that Bernier had probable cause to believe Cox was driving. I would hold that the trial court's finding of lack of probable cause is supported by substantial evidence. Moreover, in my view the trial court did not misapply the law. I would affirm the judgment of the trial court.